*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0809**

Isanti Estates, LLC,
Appellant,

vs.

McCarthy Well Company,
Respondent,

McCullough & Sons, Incorporated
d/b/a McCullough & Sons Well Drilling, Inc.,
Respondent.

**Filed March 7, 2016
Affirmed
Reilly, Judge**

Isanti County District Court
File No. 30-CV-14-93

Alexander W. Rogosheske, Rogosheske, Rogosheske & Atkins, PLLC, South St. Paul, Minnesota (for appellant)

Jacob M. Tomczik, Aafedt, Forde, Gray, Monson & Hager, P.A., Minneapolis, Minnesota (for respondent McCarthy Well Company)

Michael D. Sharkey, Rachel B. Beauchamp, Cousineau McGuire Chartered, Minneapolis, Minnesota (for McCullough & Sons)

Considered and decided by Stauber, Presiding Judge; Reilly, Judge; and Klaphake, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**REILLY**, Judge

Appellant challenges the summary-judgment dismissal of its conversion, negligence, and breach-of-contract claims, and the entry of summary judgment in favor of one of the respondents on its unjust-enrichment claim. Because the district court did not abuse its discretion by denying appellant's motion to amend the complaint, and there are no genuine issues of material fact precluding summary judgment, we affirm.

## FACTS

This appeal arises out of emergency repair work respondents McCarthy Well Company (McCarthy) and McCullough & Sons, Inc. (McCullough) performed on a well pump at a mobile home park (the Park) owned by appellant Isanti Estates, LLC (Isanti Estates) in July and August 2013. In 1991, the previous owners of the Isanti Estates property hired McCarthy to remove a well pump (Pump #1) and replace it with a new well pump (Pump #2). There is no evidence in the record about what happened to Pump #1 after 1991.

On Friday, July 26, 2013, residents of the Park reported air and black soot coming out of their bathtub faucets. The Park was without potable water. On the same day, Isanti Estates hired McCarthy to do emergency well work. The parties did not enter into a written contract. McCarthy hired McCullough as a subcontractor. Isanti Estates was unaware that McCarthy hired a subcontractor.

McCullough employees worked until 11 p.m. on Friday, July 26, to fix the well. They did not have all the necessary parts to repair the well on that day. They removed

Pump #2 and installed a temporary pump so that the Park residents were able to get some non-potable water over the weekend. McCullough employees returned on Monday, July 29, and installed the pump that is currently in the well (Pump #3). Over the next few days the well continued to have issues. At the request of Isanti Estates, on or around August 2, McCarthy employees went back to the Park and lowered the pump deeper in the well. It is disputed whether the well was fully operational by August 2 or August 8; however, it is undisputed that the well has functioned properly since August 8.

Jeff Michals, the Park property manager, testified at his deposition that on July 26 he asked someone to leave Pump #2 and the motor with Isanti Estates but was not positive to whom he was speaking. On August 5, Isanti Estates contacted McCarthy to determine the location of Pump #2. McCarthy contacted McCullough and learned McCullough employees discarded Pump #2.

McCarthy billed Isanti Estates $21,929.92 for the work done on the well. At Isanti Estates' request, McCarthy reduced the bill by $1,306.25 because a "draw down test" was not initially performed.[1] Isanti Estates submitted a claim to its insurance company, which inspected the work and paid Isanti Estates the full amount of the McCarthy invoice. Isanti Estates paid McCarthy $15,000 and disputed the remaining $5,623.67.

On October 30, 2013, McCarthy filed a claim in conciliation court against Isanti Estates for $5,623.67 plus fees. Isanti Estates removed the case to district court in February

---

[1] The parties dispute what a "draw down test" is and how long it takes to conduct a draw down test, and the record is not clear on the issue. Appellant asserts that performing a draw down test "would have indicated whether the pump was set at an appropriate height."

2014 alleging two counts of conversion (one count for Pump #1 and one count for Pump #2), negligence, and breach of contract. McCarthy filed a counterclaim for breach of contract and unjust enrichment. The parties stipulated to add McCullough as a defendant in May 2014. The parties' agreed upon discovery deadline was in October 2014. A summary-judgment hearing was held in December 2014.

On March 9, 2015, while the summary-judgment motion was pending, Isanti Estates' expert, Roger Renner, completed an on-site inspection of the well. The inspection revealed the word "RENTAL" and the date "08-92" written on Pump #3. Based on this newly discovered evidence Isanti Estates sought to add claims of fraud and misrepresentation because Pump #3 was a "rental or used pump as opposed to a new pump as [McCarthy] indicated [when it billed Isanti Estates]." On March 16, 2015, the district court dismissed all of Isanti Estates' claims and McCarthy's breach-of-contract claim and granted summary judgment in favor of McCarthy on the unjust-enrichment claim.[2] That same day Isanti Estates filed a motion to amend the previously amended complaint. The district court denied the motion because it was untimely under the circumstances.

**DECISION**

**I.**

Isanti Estates argues that the district court abused its discretion when it denied Isanti Estates' motion to amend the previously amended complaint. "Generally, the decision to

---

[2] Isanti Estates filed a request for reconsideration. In turn the district court amended one finding of fact paragraph and one conclusion of law paragraph related to the conversion of Pump #2 and invited Isanti Estates to submit a brief limited to the conversion of Pump #2. The district court denied the motion to reconsider.

permit or deny amendments to pleadings is within the discretion of the district court and will not be reversed absent a clear abuse of discretion." *Johns v. Harborage I, Ltd.*, 664 N.W.2d 291, 295 (Minn. 2003). "A party may amend a pleading by leave of court, and amendments should be freely granted, except where to do so would result in prejudice to the other party." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993). The "liberality to be shown in the allowance of amendments to pleadings depends in part upon the stage of the action and in great measure upon the facts and circumstances of the particular case." *Bebo v. Delander*, 632 N.W.2d 732, 741 (Minn. App. 2001), *review denied* (Minn. Oct. 16, 2001).

In denying Isanti Estates' motion to amend the previously amended complaint, the district court concluded:

> This dispute began as a Conciliation Court action on October 30, 2013. The initial Complaint in this matter was filed in District Court on February 14, 2014 and an Amended Complaint on May 29, 2014. The parties stipulated to two Scheduling Orders and the Court ordered the parties to complete discovery first, [sic] by September 2, 2014 and then, per a stipulation of the parties, by October 1, 2014. On March 16, 2015, the Court granted summary judgment in favor of the Defendants and dismissed the claims by Plaintiff. The Court finds the Plaintiff's Motion to Amend the previously Amended Complaint is untimely under the circumstances and as a result an amendment would cause prejudice to the Defendants. The Plaintiff had sufficient time between the filing of the initial Complaint on February 14, 2014 and the discovery deadline on October 1, 2014 to complete an inspection of the pump installed by the Defendants.

We agree with the district court. A party seeking to amend a pleading "must move with reasonable diligence" and this is "especially true where the amendment seeks to inject

5

into the case a new issue . . . that may necessitate additional evidence on the part of the adverse party to counteract that which the moving party seeks to introduce or claims has been admitted." *Willmar Gas Co. v. Duininck*, 239 Minn. 173, 176, 58 N.W.2d 197, 199 (1953). Isanti Estates attempts to excuse the untimeliness of the motion by explaining "the pump could not be pulled out in the winter months and any inspection could only be performed in the spring." Assuming this is true, it does not explain why Isanti Estates failed to inspect the well during the discovery period, which included the spring, summer, and fall of 2014.

Isanti Estates argues the district court abused its discretion because an amendment would not prejudice respondents. We disagree; respondents would be prejudiced by the addition of a fraud claim 11 days before trial based on evidence discovered 6 months after the discovery deadline. The district court did not abuse its discretion in denying the motion to amend the previously amended complaint on that basis.

**II.**

Isanti Estates argues the district court erred in granting summary judgment because there are genuine issues of material fact regarding all four of its claims. "We review a district court's summary judgment decision de novo. In doing so, we determine whether the district court properly applied the law and whether there are genuine issues of material fact that preclude summary judgment." *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010) (citation omitted). The evidence must be viewed in the light most favorable to the party against whom judgment was granted. *Fabio*, 504 N.W.2d at 761 (citation omitted); *see* Minn. R. Civ. P. 56.03. "[S]ummary judgment is

6

inappropriate if the nonmoving party has the burden of proof on an issue and presents *sufficient evidence* to permit reasonable persons to draw different conclusions." *Schroeder v. St. Louis Cty.*, 708 N.W.2d 497, 507 (Minn. 2006).

### A. Conversion of Pump #1

Isanti Estates argues McCarthy converted Pump #1. In August of 1991, Pump #1 was tested and stored by McCarthy for the then owners of the Park.[3] There is no evidence in the record about what happened to Pump #1 after 1991. Specifically, there is no documentation in the record that Isanti Estates acquired Pump #1 when it purchased the Park; therefore, Isanti Estates cannot prove it ever had a property interest in Pump #1.[4] A "plaintiff's lack of an enforceable interest in the subject property is a complete defense against conversion." *Lassen v. First Bank Eden Prairie*, 514 N.W.2d 831, 838 (Minn. App.

---

[3] According to an invoice from McCarthy in 1991 the pump tested satisfactorily at the time, but "the motor [was] dated 1981 and the manufacturer [of the motor] only recommends a two year shelf life for the motor." McCarthy agreed to "store [the] unit . . . free of charge . . . but, [could not] guarantee that the motor [would] operate when it [was] finally installed in the well."

[4] The district court found:

> In 1996, the current owner of Isanti Estates, JCB Properties, LLC ("JCB"), acquired the Isanti Estates property and its assets through a mortgage foreclosure. A Certificate of Real Estate Value listed personal property included in the sale, including "Maintenance Equipment" valued at $20,000.00. The transaction did not explicitly include pump or well equipment and the Quit Claim Deed stated the "Grantee knows of no wells on the property." The Order Discharging Receiver and Terminating Receivership for the property ordered that the Receiver transfer to JCB various other related assets, none of which included Pump #1. In 2002 JCB transferred the Park and its related assets to [appellant].

Isanti Estates does not assert that these findings are clearly erroneous.

7

1994), *review denied* (Minn. June 29, 1994). Because there is no evidence in the record to prove Isanti Estates had a property interest in Pump #1 there is not sufficient evidence to submit to a trier of fact on the conversion of Pump #1.

**B.  Conversion of Pump #2**

Next Isanti Estates alleges that McCarthy converted Pump #2. "Conversion is an action at law . . . defined as an act of willful interference with personal property, 'done without lawful justification by which any person entitled thereto is deprived of use and possession.'" *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997) (internal citation and quotation omitted). Conversion has two elements: (1) the plaintiff holds a property interest, and (2) the defendant deprives plaintiff of that interest. *Williamson v. Prasciunas*, 661 N.W.2d 645, 649 (Minn. App. 2003). The requisite intent for conversion is that the "act [is] one which [respondent] knows to be destructive of any outstanding possessory right, if such there be." *Christensen v. Milbank Ins. Co.*, 658 N.W.2d 580, 585-86 (Minn. 2003). It is undisputed that Isanti Estates held a property interest in Pump #2 and it is undisputed that McCullough employees discarded Pump #2.

However, there is not evidence sufficient to submit to a trier of fact regarding the issue of McCullough's intent to destroy Isanti Estates' possessory rights to Pump #2 to substantiate Isanti Estates' conversion claim. Isanti Estates asserts that on July 26, while McCullough employees were performing the emergency well work, Michals told the employees that he wanted Pump #2 and the motor. The record does not support this assertion. The only evidence in the record that Michals made this request is his deposition testimony that he was "not positive who [he] was even talking to" when he made the

8

request. Even viewed in the light most favorable to Isanti Estates, because Michals cannot identify to whom he made the request, there is not sufficient evidence in the record to prove McCullough employees had the requisite intent to substantiate a conversion claim. Here, Michals's testimony may create a metaphysical doubt as to a factual issue, but it is not sufficiently probative to survive summary judgment. *See DLH*, 566 N.W.2d at 71 ("[T]here is no genuine issue of material fact for trial when the nonmoving party presents evidence which merely creates a metaphysical doubt as to a factual issue and which is not sufficiently probative with respect to an essential element of the nonmoving party's case to permit reasonable persons to draw different conclusions.").

### C. Negligence

Isanti Estates argues that McCullough breached its duty of care by failing to perform a draw down test.

> Negligence is the failure to exercise the level of care that a person of ordinary prudence would exercise under the same or similar circumstances. To recover on a claim of negligence, a plaintiff must prove: (1) the existence of a duty of care; (2) a breach of that duty; (3) an injury; and (4) that the breach of the duty was a proximate cause of the injury.

*Doe 169 v. Brandon*, 845 N.W.2d 174, 177 (Minn. 2014) (internal citation omitted). "Ordinarily, expert testimony is required to establish the prevailing standard of care and the consequences of departure from that standard." *Pond Hollow Homeowners Ass'n v. The Ryland Grp., Inc.*, 779 N.W.2d 920, 923 (Minn. App. 2010). "When qualified expert opinion with adequate foundation is laid on an element of a claim, a genuine issue of material fact exists." *Admiral Merchs. Motor Freight, Inc. v. O'Connor & Hannan*, 494

9

N.W.2d 261, 266 (Minn. 1992). Here, there was not a qualified expert with adequate foundation for its opinion at the time of summary judgment.

The record at the time of summary judgment only contained the assertion that Roger Renner "is expected to give expert testimony [that] the work performed by McCarthy and McCullough was inconsistent with standard of care in the industry." Roger Renner's expert disclosure lacked sufficient foundation and detail. Conclusory statements or promises to produce evidence at trial are not sufficient to create a genuine issue of material fact. *Nicollet Restoration, Inc. v. City of St. Paul*, 533 N.W.2d 845, 848 (Minn. 1995). The record contained no further explanation about what the standard of care was or how it was violated, and to resist summary judgment, Isanti Estates must do more than "rest on mere averments." *DLH*, 566 N.W.2d at 71. Because there was not sufficient evidence in the record of the prevailing standard of care and the consequences of departure from that standard, the district court did not err in its grant of summary judgment. *See Kellogg v. Finnegan*, 823 N.W.2d 454, 458 (Minn. App. 2012) ("Summary judgment is appropriate when the record lacks proof of any of the four elements [of negligence].").

### D.  Breach of Contract

Isanti Estates argues that summary judgment on its breach-of-contract claim was not appropriate because the terms of the contract between McCarthy and Isanti Estates were disputed and not appropriate for summary judgment. To establish a breach-of-contract claim, a plaintiff must show that (1) a contract was formed; (2) the plaintiff performed any conditions precedent; and (3) the defendant breached the contract.

10

*Commercial Assocs., Inc. v. Work Connection, Inc.*, 712 N.W.2d 772, 782 (Minn. App. 2006).

### 1. McCarthy

Isanti Estates asserts that the work on the well "should have been done correctly on July 29th," but does not point to any evidence in the record that any contract between the parties contained a term regarding the completion date. While the record contains evidence of an implicit contract between Isanti Estates and McCarthy, the mere fact that Isanti Estates was dissatisfied with how long it took to fix the well cannot substantiate a claim for breach of contract when there is no evidence in the record of the parties' intention regarding when the work would be completed. *Webb Bus. Promotions, Inc. v. Am. Elecs. & Entm't Corp.*, 617 N.W.2d 67, 75 (Minn. 2000) ("The agreement necessary to form a contract need not be express, but may be implied from circumstances that clearly and unequivocally indicate the intention of the parties to enter into a contract."); *TNT Props., Ltd. v. Tri-Star Developers LLC*, 677 N.W.2d 94, 102 (Minn. App. 2004) ("Minnesota follows the objective theory of contract formation, under which an outward manifestation of assent is determinative, rather than a party's subjective intent."). Isanti Estates hired McCarthy to do emergency well work, and the well has functioned properly since August 2013, thus, there is no evidence in the record that McCarthy breached its implicit contract with Isanti Estates and summary judgment is appropriate.

### 2. McCullough

Regarding Isanti Estates' breach-of-contract claim against McCullough, there is no evidence in the record of a contract between the two parties. McCullough performed work

at the Park as an agent of McCarthy, and Isanti Estates asserts that it was unaware McCarthy hired McCullough as a subcontractor to perform the repair. Despite the absence of a contract between Isanti Estates and McCullough, Isanti Estates asserts a breach-of-contract claim against McCullough on an agency theory. Isanti Estates does not cite to, nor are we aware of, a single case where an agent is vicariously liable for the breach of contract by its principal absent its own contract.

Because there is no evidence of a contract between Isanti Estates and McCullough, and there is not sufficient evidence in the record that McCarthy breached any contract that it had with Isanti Estates, there is not sufficient evidence to submit to a trier of fact on this claim and summary judgment is appropriate.[5]

## III.

Isanti Estates argues the district court erred when it granted summary judgment in favor of McCarthy on the unjust-enrichment claim. "Unjust enrichment requires that: (1) a benefit be conferred by the plaintiff on the defendant; (2) the defendant accept the benefit; (3) the defendant retain the benefit although retaining it without payment is inequitable." *Zinter v. Univ. of Minn.*, 799 N.W.2d 243, 247 (Minn. App. 2011), *review denied* (Minn. Aug. 16, 2011). Isanti Estates does not dispute that the first two elements of an unjust-enrichment claim are satisfied, that is McCarthy conferred a benefit on Isanti Estates that

---

[5] McCarthy filed a cross-appeal arguing that in the event this court finds a fact dispute regarding Isanti Estates' breach-of-contract claim against McCarthy, we should also reverse the dismissal of its breach-of-contract claim against appellant. Because we are affirming the dismissal of Isanti Estates' claim for breach of contract, we do not reach McCarthy's cross-appeal.

Isanti Estates accepted. Isanti Estates alleges there is a question of fact on the third element of the unjust-enrichment claim. However, it is undisputed that Isanti Estates accepted payment from the insurance company for the full amount charged by McCarthy for the repair, and it is clearly inequitable for Isanti Estates to retain insurance proceeds for work done by McCarthy. Thus, the grant of summary judgment in favor of McCarthy for the insurance proceeds retained by Isanti Estates is appropriate.

**Affirmed.**